IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AUSTIN LEGAL VIDEO, et al. | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) CASE NO. 1:23-CV-00421-LY |
| | ) |
| DEPOSITION SOLUTIONS, LLC D/B/A | ) |
| LEXITAS, et al., | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Alderson Reporting Company, Inc. ("ARC"), pursuant to Federal Rule of Civil Procedure 56, respectfully moves this Court to grant summary judgment on all counts contained in the Complaint of Plaintiffs Austin Legal Video, LLC ("ALV"), Depo-Notes, LLC ("Depo-Notes") and Pasqual Perez III ("Perez," and, collectively with ALV and Depo-Notes, "Plaintiffs"). The uncontroverted facts are that: (1) ARC has no relationship with any of the other named Defendants and has never discussed Plaintiffs' business with any of them; and (2) ARC ceased doing business with ALV in 2021 after ARC identified an alternate vendor who provided the same services as ALV at better prices. ARC's independent, legitimate business reasons for changing vendors preclude any antitrust liability on ARC's part, and the Court should accordingly grant judgment to ARC as a matter of law. In further support of this Motion, ARC states as follows:

## STATEMENT OF UNDISPUTED FACTS

1. ARC is a Delaware corporation with its principal place of business in Washington, D.C. (Compl., Doc. 1, at ¶ 15.) ARC provides court reporting, videography, and other legal services nationwide. (David Kis Aff., Ex. 1, at ¶ 2.) ARC has been in business for over 80 years

and has provided reporting services for many landmark events in that time, including among other things for President John F. Kennedy's presidential campaign in 1959, for the Presidential Commission on the Space Shuttle Challenger accident in 1986, and for the September 11th Victims Compensation Fund Hearings in 2014. (*Id.* at ¶ 2.)

2. The remaining court reporter Defendants are all Texas citizens or Texas companies with their principal places of business in Texas. (*See* Doc. 1 at ¶¶ 12, 14, 16-18, 20-23.)

3. ARC does not have a Texas office or any Texas employees. (*See* Ex. 1 at ¶ 3.) ARC contracts out deposition services when its clients need videography and transcription services in Texas. (*Id.*)

4. Between 2014 and 2021, ARC from time to time engaged ALV to provide videography and transcription services for depositions taking place in Texas. (*See* Ex. 1 at ¶ 4 and Ex. A.) ARC's business records reflect that ARC paid ALV a total of $20,071 for these services over that seven year span. (*Id.*)

5. Demand for ARC's services in the Texas market fluctuates from year to year. (*Id.* at ¶ 5.) Accordingly, some years ARC sent more work to ALV and other years it sent less work to ALV. (*Id.*) At no point did ARC elect to use or not use ALV's services due to some voice-to-text product that Perez was developing and/or marketing. (*Id.*)

6. In February 2020, ARC employee Amy Derr, based in Washington D.C., learned of Perez's Depo-Notes program for the first time from an advertisement on LinkedIn. (*See* Feb. 2020 e-mails, Ex. 1-D.) Shortly thereafter, ARC employee Molly Collins, also based in Washington, D.C., spoke to Perez on the phone to inquire about his Depo-Notes program, at which time *Perez* informed Collins that he had received backlash from Lexitas. (*Id.*) Collins viewed this information as nothing more than idle gossip. (*Id.*)

7. Shortly after these initial conversations, in March 2020, the Coronavirus outbreak accelerated throughout the United States, nationwide lockdowns went into effect, and the federal government issued its "15 Days to Stop the Spread" guidelines. (*Id.* at ¶ 6.)

8. The Coronavirus pandemic caused a 75% drop-off in demand for deposition services to be provided by ARC in 2020. (*Id.*) As a result, ARC significantly curtailed its use of ALV's services in 2020 and did not explore Depo-Notes further at that time. (*Id.* at ¶ 7.) In other words, ARC did not hire ALV to video or transcribe many depositions in 2020 because not many depositions were taken in 2020. (*Id.*)

9. The effects of the Coronavirus carried over into 2021 and are still affecting ARC's business today. (*Id.* at ¶ 8.) One notable lasting effect has been the rise in the proportion of depositions that are taken remotely. (*Id.*) In many cases, ARC no longer needs a vendor based in Texas to video or transcribe Texas depositions. (*Id.*)

10. Because of this change in the overall business environment, ARC elected in 2021 to identify and select a national vendor capable of servicing the Texas market. (*Id.* at ¶ 9.)

11. ARC selected TISA Legal Media as its new vendor. (*Id.* at ¶ 10.) TISA is capable of handling remote depositions nationwide. (*Id.*) TISA also offers onsite deposition services in Texas when needed. (*Id.*)

12. TISA's per hour charge for remote video depositions with exhibit sharing capabilities was $10 less than the rate charged by ALV for the same services. (*Id.* at ¶¶ 11, 12.) For depositions that did not require remote exhibit sharing capabilities, TISA's rate was $20 less per hour than ALV's. (*Id.*)

13. ARC elected to use TISA instead of ALV beginning in May 2021 because TISA charged lower rates than ALV and operated on a national scale. (*Id.* at ¶ 13.) ARC never agreed

with any other person or entity to cease using Plaintiffs' services, whether due to some new voice-to-text service being developed and marketed by Perez or otherwise. (*Id.*)

16. ARC never discussed its decision to choose a new Texas vendor with any other Defendant or third-party entity. (*Id.* at ¶ 14.) ARC, based in Washington, D.C., certainly did not pressure any Texas court reporting companies or discourage them from doing business with Plaintiffs. (*Id.*) ARC simply has no interest in who does or does not do business with Plaintiffs in Texas, or their reasons. (*Id.*)

15. Plaintiffs' Complaint does not allege a single statement by ARC regarding ALV, Depo-Notes, or Perez. (*See generally* Doc. 1.)

16. ARC was not a party to, or even aware of, the "Sham Litigation" described in the Complaint. (*See* Doc. 1 at ¶¶ 50-51; Ex. 1 at ¶ 15.)

17. Businesses are free to contract with companies that provide better prices, and doing so is legitimate business activity. (Doc. 1 at ¶ 54.)

## SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As there must be a "genuine dispute" as to a "material fact" in order to avoid summary judgment, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). (emphasis in original). "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). And a dispute is "genuine" only if the record taken as a whole could lead a reasonable trier of fact to find for the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ARGUMENT & ANALYSIS

### A. ARC is entitled to summary judgment on Plaintiffs' Sherman Act § 1 Claim.

Section 1 of the Sherman Act makes combinations in restraint of trade illegal. 15 U.S.C. § 1. "To establish a § 1 violation, a plaintiff must prove that: (1) the defendants engaged in a conspiracy; (2) that restrained trade; (3) in the relevant market." *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 271 (5th Cir. 2008). As to the conspiracy element, the "crucial question" in a § 1 claim is "whether the challenged anticompetitive conduct stems from independent decision or from an agreement." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)). Conduct that is "as consistent with permissible competition as with illegal conspiracy" cannot, by itself, "support an inference of antitrust conspiracy." *Matsushita*, 475 U.S. at 588.

Evidence of "independent parallel conduct" is not enough to establish a conspiracy in restraint of trade. *Motorola*, 547 F.3d at 271. Instead, to avoid summary judgment on a § 1 claim, a plaintiff "must present evidence 'that **tends to exclude** the possibility' that the alleged conspirators acted independently. *Id.* (emphasis added). Given this high bar, appellate courts will not reverse a grant of summary judgment on a § 1 claim unless "the evidence is strong enough to reasonably exclude the possibilities of independent action and conduct consistent with permissible competition." *Id.*

Plaintiffs cannot meet their burden of establishing that ARC was part of some antitrust conspiracy with a group of Texas court reporting agencies, and the Court should grant ARC judgment as a matter of law. None of the alleged statements in Plaintiffs' Complaint can be attributed to ARC or its agents or employees. (*See* Statement of Undisputed Facts ("Facts") at ¶ 15.) ARC has no affiliation with any of the Texas Defendants, and ARC has never even discussed any of the Plaintiffs with any of the Texas Defendants. (*Id.* at ¶ 14.) The mere fact that ARC

stopped using ALV's services is not antitrust evidence, especially given that the "freedom to switch suppliers lies close to the heart of the competitive process." *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 137 (1998).

There is no evidence, whatsoever, that ARC engaged in some conspiracy to boycott Plaintiffs' services beginning in 2019. There is no evidence, whatsoever, to contradict the fact that ARC continued to do business with ALV for *two years* after Perez claims to have developed and begun marketing his Depo Notes program. (*Compare* Compl., Doc. 1 at ¶ 43 *with* Facts ¶ 10, *supra*.) There is no evidence, whatsoever, to controvert the fact that ARC's demand for deposition services decreased dramatically in 2020 due to the Coronavirus pandemic, and that that is the reason ARC's use of ALV declined that year. (Facts at ¶ 8.) There is no evidence, whatsoever, to controvert the fact that ARC elected to change its business strategies and practices in light of the Coronavirus pandemic and its effects on the market for deposition services. (*Id.* at ¶¶ 7-10.) And there is no evidence, whatsoever, to controvert the fact that the vendor ARC engaged in 2021 operates on a national scale and with better pricing than ALV. (*Id.* at ¶ 11-13.) Plaintiffs certainly cannot "exclude the possibility" that ARC acted independently of the other named Defendants when it took these actions. *Motorola*, 547 F.3d at 271.

It is also appropriate for this Court to enter summary judgment now because Plaintiffs are not going to discover evidence to controvert the fact that ARC independently elected to engage a new vendor with a national reach and lower prices. *See Paul Kadair, Inc. v. Sony Corp. of Am.*, 694 F.2d 1017, 1029-31 (5th Cir. 1983). In *Kadair*, the Fifth Circuit affirmed a trial judge's denial of an antitrust plaintiff's Rule 56(f) request for discovery. *Id.* It did so because district courts may use their discretion to prevent "the plaintiff from burdening the defendants with a needless round of discovery in a frivolous lawsuit." *Id.* at 1030 (quoting *Contemporary Mission, Inc. v. U.S.P.S.*,

648 F.2d 97, 107 (2d Cir. 1981)). The takeaway from *Kadair* is that something more than a factual allegation in a complaint is required before Rule 56(f) can be invoked to defeat a properly supported summary judgment motion. *Id.* Rule 56(f) does not condone continuances to fulfill "wholly speculative" discovery requests based on "bare assertions" about information defendants *might* possess. *Id.* This protection against harassing defendants with Rule 56(f) "fishing expeditions" is particularly appropriate in antitrust cases, which are "expensive and time consuming" and, with their treble damages, likely to "inspire vexatious litigation." *Id.* at 1030-31.

### B. ARC is entitled to summary judgment on Plaintiffs' Texas Antitrust Act claim.

Plaintiffs' second claim for violation of the Texas Fair Enterprise & Antitrust Act fares no better. "The TFEAA was enacted to establish antitrust laws for the State of Texas." *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 528 (5th Cir. 2002) (citing Tex. Bus. & Comm. Code § 15.01 et seq. (Vernon 1987). "Texas courts are statutorily instructed to interpret the TFEAA in harmony with federal judicial interpretations of equivalent federal statutes." *Id.* (citing Tex. Bus. & Comm. Code § 15.04 (Vernon 1987).) As such, Texas applies federal standards for determining whether a violation of the TFEAA has occurred. *Id. See also In re Memorial Hermann Hosp. Sys.*, 464 S.W.3d 686, 708 (Tex. 2015) (Texas "rel[ies] heavily on the jurisprudence of the federal courts" in applying the TFEAA).

There is no evidence that ARC participated in any conspiracy in restraint of trade in violation of the Sherman Act. Likewise, and for the same reasons discussed above, there is no evidence that ARC participated in any conspiracy in violation of the TFEAA. The two claims rise and fall together, so ARC is also entitled to summary judgment on Plaintiffs' state law antitrust claim.

### C. ARC is entitled to summary judgment on Plaintiffs' claim for tortious interference.

Plaintiffs' final claim is for tortious interference. (Doc. 1 at ¶¶ 76-79.) The sole basis for that cause of action is Plaintiffs' allegation that "Defendants" "pressur[ed] each other and third parties not to work with Plaintiffs." (Doc. 1 at ¶ 78.) In their Complaint, Plaintiffs do not identify a single statement by ARC or any of its agents or employees to this effect. (*See generally* Doc. 1.)[1] This is because ARC has never encouraged or pressured others not to do business with Plaintiffs. (Facts at ¶ 14.) In fact, ARC never discussed its decision to stop doing business with ALV with any third parties at all. (*Id.*)

As there is no evidence to give rise to any genuine dispute of material fact as to whether ARC "pressured" others not to do business with Plaintiffs, ARC is entitled to summary judgment on Count III of Plaintiffs' Complaint as well.

### CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant Alderson Reporting Company, Inc. respectfully moves this Court to enter summary judgment in its favor as to Counts I, II, and III of Plaintiffs' Complaint.

Respectfully submitted,

---

[1] For this reason, Count III is not adequately pled against ARC and is therefore subject to dismissal under Rule 12(b)(6). "Group pleading" like this is not permitted in the Fifth Circuit. *See Noble Capital Tex. Real Estate Income Fund LP v. Newman*, 2023 WL 3035411 at *3 (W.D. Tex. Jan. 13, 2023). Claims must be clearly and fairly connected to particular defendants. *Id.* Plaintiffs here have made no effort to do so.

*/s/ Thomas K. Potter, III*
Thomas K. Potter, III
State Bar No. 24049119

BURR & FORMAN LLP
222 Second Avenue South
Suite 2000
Nashville, TN 37201
Telephone: (615)724-3200
Facsimile: (615) 724-3331

*Attorney for Defendant*
ALDERSON REPORTING COMPANY, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 20, 2023, all counsel who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system.

*/s/ Thomas K. Potter, III*
Thomas K. Potter, III
