IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AUSTIN LEGAL VIDEO, LLC, DEPO-NOTES, LLC, and PASQUAL PEREZ, III, <br><br> Plaintiffs, <br><br> v. <br><br> DEPOSITION SOLUTIONS, LLC D/B/A LEXITAS, COURT REPORTERS CLEARINGHOUSE, INC., ALDERSON REPORTING COMPANY, INC., SOUTHWEST REPORTING & VIDEO SERVICE, INC., KENNEDY REPORTING SERVICE, INC., TEXAS COURT REPORTERS ASSOCIATION, INC., SPEECH TO TEXT INSTITUTE, INC., SHERRI FISHER, LORRIE SCHNOOR, SONIA TREVINO, and SHELLY TUCKER <br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § Case No. 1:23-cv-00421 |

### DEFENDANT SOUTHWEST REPORTING & VIDEO SERVICE, INC.'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Pursuant to Rule 12(b)(1) and Rule 56 of Federal Rules of Civil Procedure, Defendant, Southwest Reporting & Video Service, Inc. (hereinafter "Southwest"), files this Motion to Dismiss and Motion for Summary Judgment and respectfully requests that Plaintiff Pasqual Perez, III's take nothing on all of his claims against Southwest. In support thereof, Southwest respectfully shows the Court the following:

#### INTRODUCTION

In his live complaint, Plaintiff, Mr. Perez, alleges that defendants engaged in a group boycott. *See* Document No. 73. Mr. Perez brings claims under Section 1 of the Sherman Act, 15 U.S.C. § 1, as well as under state law, including the Texas Free Enterprise and Antitrust Act of

1983, TEX. BUS. & COM. CODE §§ 15.04 et seq., based on defendants' alleged unlawful and anticompetitive conduct. *Id*.

Mr. Perez seeks a permanent injunction, damages in an amount to be determined at trial, treble damages under the federal and state antitrust statutes, reasonable attorneys' fees and costs, and pre- and post-judgment interest at the maximum legal rates. In his discovery responses, plaintiff claims damages in the amount of $510,000. Exhibit J at Response No. 1.

## NATURE AND STAGE OF THE PROCEEDING

Mr. Perez filed the Original Complaint on April 18, 2023. *See* Document No. 1. In response to multiple motions to dismiss, Mr. Perez amended the complaint. *See* Document No. 22. Despite these amendments, the Court ultimately dismissed all claims asserted by Depo-Notes, LLC with prejudice for lack of standing, and dismissed Depo-Notes' claims for tortious interference with existing contracts against Southwest and other defendants without prejudice. *See* Document No. 53.

Mr. Perez filed his Second Amended Complaint on February 16, 2024, which remains its live pleading. *See* Exhibit A, Document No. 73.

On February 18, 2025, the Court dismissed the claims of co-plaintiff Austin Legal Video, LLC without prejudice due to its failure to retain counsel. *See* Document No. 106.

As a result, the only remaining plaintiff is Mr. Perez, in his individual capacity. His remaining claims against Southwest arise from an alleged unlawful group boycott, asserted under both Section 1 of the Sherman Act and the Texas Free Enterprise and Antitrust Act, with a common law claim for tortious interference with prospective business relations serving as the underlying tort. *See* Exhibit A, Document No. 73.

Southwest now files this Motion to Dismiss and Motion for Summary Judgment that Mr. Perez take nothing as to all remaining claims.

## MOTION TO DISMISS

To establish Article III standing, a plaintiff must show that he or she 'h[as] (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Ortiz v. Am. Airlines, Inc.,* 5 F.4th 622, 628 (5th Cir. 2021) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016); citing, inter alia, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). For an antitrust claim, standing exists only if a plaintiff shows 1) injury-in-fact proximately caused by the defendants' conduct; 2) antitrust injury; and 3) proper plaintiff status, which assures that other parties are not better situated to bring suit. *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir.2009); *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All.*, 123 F.3d 301, 305 (5th Cir. 1997)).

A member of a limited liability company lacks standing to assert claims in an individual capacity when the cause of action belongs to the company. *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 360 (Tex. App.—Houston [14th Dist.] 2016, writ denied). On February 18, 2025, the Court dismissed the claims of co-plaintiff Austin Legal Video, LLC due to its failure to retain counsel. *See* Document No. 106. As a result, the only remaining plaintiff is Mr. Perez, proceeding in his individual capacity.

However, the allegations in the live pleading reflect injuries allegedly sustained by Austin Legal Video, LLC, not Mr. Perez personally. *See* Exhibit A, Document No. 73 at ¶72, ¶80. Accordingly, because Mr. Perez has not alleged any personal injury distinct from the alleged harm

to Austin Legal Video, LLC, he lacks standing to pursue these claims in his individual capacity, and dismissal of all claims is warranted as a matter of law.

## SUMMARY JUDGMENT EVIDENCE

In support of this motion, Defendant relies upon the following evidence and incorporates it in this motion by reference:

    Exhibit "A" – Plaintiff's Second Amended Complaint (Document 73)

    Exhibit "B" – Affidavit of Tim McCarble

    Exhibit "C" – Affidavit of Barbara McCauley

    Exhibit "D" – Plaintiff's Interrogatory Responses to Defendant Southwest's First Set of Interrogatories, served on April 23, 2025.

    Exhibit "E" – April 12, 2019, Email Chain Between Southwest and ALV (Bates labeled Southwest 000001 – 000003).

    Exhibit "F" – January 27–28, 2020, Email Chain Between Southwest and ALV (Bates labeled Southwest 000004 – 000009).

    Exhibit "G" – December 15–16, 2020, Email Chain Between Southwest and Walter Bryan (Bates labeled Southwest 000010 – 000012).

    Exhibit "H" – January 4–5, 2021, Email Chain Between Southwest and Pasqual Perez, III (Bates labeled Southwest 000013 – 000015).

    Exhibit "I" – January 6–9, 2023, Email Chain Between Southwest and Walter Bryan (Bates labeled Southwest 000016 – 00009).

    Exhibit "J" – Plaintiff's Interrogatory Responses to Defendant Sherry Fisher and Shelly Tucker's First Set of Interrogatories, served on April 23, 2025.

## FACTS

Southwest Reporting & Video Service, Inc. ("Southwest") is a Texas corporation established in 1972 that provides litigation support services, including court reporting and videography. Exhibit B at ¶3.

Between 2016 and 2020, Southwest engaged Pasqual Perez and his company, Austin Legal Video ("ALV"), to provide videography services for depositions in the San Antonio and Austin, Texas areas. *Id.* at ¶4. During that time, Southwest communicated with ALV through Mr. Perez and Michelle Cherney-Perez regarding scheduling and coordination of assignments. Exhibit C at ¶4.

On April 12, 2019, Southwest requested an updated rate sheet from ALV. *See* Exhibit E. In response, Mr. Perez and Ms. Cherney-Perez provided revised pricing and included the following:

> "Unfortunately, due to the amount of cancellations from Southwest and the fact that we are not getting all of your video work, we will not be able to make any reservations on our calendar more than a week out. We hope you understand our position and we apologize for any inconvenience." *Id.*

Southwest responded that the cancellations were driven by client-initiated deposition cancellations, not internal reassignment, and reaffirmed that ALV remained its preferred videographer for the San Antonio and Austin areas at that time. *Id.*

Southwest determined, independently, that ALV's self-imposed scheduling restriction would impede its ability to meet client needs and maintain operational efficiency. Exhibit B at ¶6; Exhibit C at ¶5-7. Because depositions are typically scheduled weeks in advance, Southwest concluded that it could no longer regularly assign deposition videography work to ALV due to the operational limitations created by the one-week scheduling restriction. Exhibit B at ¶6. Mr. Perez acknowledged in discovery that Southwest stopped using ALV "not because of bad service but because [ALV] could not take their work a week in advance." Exhibit D at Response No. 2.

Although ALV's scheduling restrictions prevented Southwest from assigning most deposition work, Southwest continued to use ALV in early 2020 for last-minute depositions that fell within the one-week scheduling window ALV permitted, when feasible. Exhibit B at ¶8;

Exhibit C at ¶9. These instances were infrequent, as most depositions are scheduled well in advance. *Id*.

On January 27, 2020, Southwest contacted ALV to request coverage for depositions scheduled for the following day and inquired about pricing for videography services alone versus bundled services including court reporting. *See* Exhibit F. ALV proposed bundling videography with a rough draft transcript generated using its proprietary speech-to-text software. *Id*. Southwest declined the offer, explaining that it had already secured a court reporter. *Id.* Perez subsequently sent follow-up promotional material regarding ALV's "Depo-Notes" platform. *Id.*

In March 2020, following the onset of the COVID-19 pandemic, in-person depositions in the San Antonio and Austin areas ceased. Exhibit B at ¶7; Exhibit C at ¶10. Southwest did not schedule any in-person deposition videography assignments in those regions for the remainder of the year. Exhibit B at ¶7. Instead, depositions were conducted remotely via Zoom, and videography services for those proceedings were handled internally by Southwest staff. *Id*.

On December 15, 2020, Walter Bryan, a former employee of ALV, contacted Southwest offering independent videography services. *See* Exhibit G.  Southwest requested confirmation that Bryan was no longer affiliated with ALV, which Bryan provided. *Id*. This inquiry was made solely for logistical and scheduling purposes, given the prior scheduling restrictions imposed by ALV. Exhibit B at ¶10; Exhibit C at ¶12.

On January 4, 2021, Perez contacted Southwest requesting feedback regarding the decline in work assignments. *See* Exhibit H. Southwest responded by referencing the April 2019 communication and explained that the scheduling restrictions imposed by ALV, specifically its refusal to accept assignments more than one week in advance, made it difficult to coordinate deposition logistics and led to the decision to discontinue regularly assigning them work. *Id.*

Southwest also noted that it had not conducted any in-person depositions in Perez's coverage area in 2020 due to the pandemic. *Id*.

At some point after ALV imposed its scheduling limitations in April 2019, Mr. Perez initiated a telephone call with Southwest's Scheduling Coordinator, Barbara McCauley, regarding the volume of deposition work ALV was receiving. During the call, Mr. Perez yelled, cursed, and expressed his frustration in a hostile and unprofessional manner. Exhibit C at ¶11. His conduct left Ms. McCauley visibly shaken and upset. *Id*. As a result of this incident, Southwest's management made the decision to cease assigning deposition work to ALV entirely and verbally instructed the scheduling department not to use ALV moving forward. Exhibit B at ¶9; Exhibit C at ¶11.

On January 6, 2023, Southwest exchanged emails with Walter Bryan regarding updated pricing and asked whether he had any ongoing affiliation with Perez, which he denied. *See* Exhibit I. On January 9, 2023, Bryan followed up to ask why Southwest was concerned about a connection with Perez. *Id.* In response, Southwest explained that Perez had previously engaged in unprofessional communications with its scheduling coordinator and that Southwest had also received confidential client concerns about Perez. *Id.* This inquiry was made solely for logistical and scheduling purposes, given the prior scheduling restrictions imposed by ALV and concerns regarding Mr. Perez's unprofessional conduct. Exhibit B at ¶10; Exhibit C at ¶12.

**SUMMARY JUDGMENT STANDARD**

If a movant shows that there is no genuine issue of material fact as to all or part of a claim, then the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). A defendant who seeks summary judgment on a plaintiff's claim must demonstrate the absence of a genuine dispute of material fact by either (1) submitting summary-judgment evidence that negates the existence of a material element of the plaintiff's claim or (2) showing there is no evidence to

support an essential element for the plaintiff's claim. *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996); Fed. R. Civ. P. 56(c).

"The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmovant to show the existence of a genuine fact issue for trial . . . ." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The non-movant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Id*. at 1075 (internal citations and quotation marks omitted). Instead, the non-moving party "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id*. Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

## ARGUMENT AND AUTHORITIES

**A.     PLAINTIFF'S CLAIM UNDER SECTION 1 OF THE SHERMAN ACT FAILS AS A MATTER OF LAW BECAUSE HE CANNOT ESTABLISH A CONSPIRACY.**

Section 1 of the Sherman Act provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce … is declared to be illegal."[1] . To establish a violation of Section 1, a plaintiff "must demonstrate that: '(1) [the defendants] engaged in a conspiracy, (2) the conspiracy had the effect of restraining trade, and (3) trade was restrained in the relevant market.'" *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 373 (5th Cir. 2014).

Regarding the conspiracy element, "the crucial question [in a Section 1 claim] is whether the challenged anticompetitive conduct stems from independent decision or from an agreement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (internal quotations omitted). To establish a conspiracy, a plaintiff must present evidence that the defendant engaged in concerted action, which is defined as "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984).

Concerted action may be proven by direct or circumstantial evidence. Direct evidence demonstrates an express agreement among the alleged conspirators, while circumstantial evidence permits the inference of a conspiracy based on surrounding facts and conduct. *See Tunica-Biloxi Indians of La. v. Pecot*, 496 F.3d 403, 409 (5th Cir. 2007). However, independent parallel conduct does not alone establish the contract, combination, or conspiracy required by Section 1. *See Bell Atlantic*, 127 S.Ct. at 1964. Moreover, circumstantial evidence must "tend to exclude the possibility that the alleged conspirators acted independently." *Golden Bridge Tech., Inc. v.*

---

[1] 15 U.S.C. § 1.

*Motorola, Inc.,* 547 F.3d 266, 271 (5th Cir. 2008). A plaintiff can survive summary judgment only if it "show[s] that the inference of conspiracy is reasonable in light of the competing inferences of independent action." *Tunica,* 496 F.3d at 410.

Here, Mr. Perez has presented no direct evidence that Southwest knew of or participated in any alleged conspiracy. Instead, he relies solely on circumstantial evidence, none of which excludes the possibility of independent action. Mr. Perez has not identified a single conversation, meeting, or exchange of information between Southwest and any other alleged participant in the purported boycott. There is no evidence that Southwest communicated or coordinated with any other defendant regarding Mr. Perez or his business, or that it entered into any agreement reflecting a "conscious commitment to a common scheme designed to achieve an unlawful objective," as required to establish concerted action under Section 1 of the Sherman Act. *Monsanto Co.*, 465 U.S. at 764, 104 S.Ct. 1464. To the contrary, the undisputed summary judgment evidence affirmatively demonstrates that Southwest acted independently based on its own business judgments and its direct experiences with Mr. Perez and ALV.

Mr. Perez primarily relies upon two allegations to claim Southwest's participation in the alleged boycott: (1) that Southwest ceased assigning work to ALV and Mr. Perez in 2019, the year he alleges the alleged boycott began; and (2) that Southwest inquired about Walter Bryan's affiliation with Mr. Perez and ALV when Bryan offered independent videography services. Neither allegation supports a reasonable inference of conspiracy. *See* Exhibit A.

The undisputed evidence shows that Southwest reduced its work with ALV in 2019 because of scheduling limitations imposed by ALV, not due to any agreement with competitors. As Southwest informed Mr. Perez when he imposed such limitations, the cancellations complained of were caused by client actions, not reassignment of work, and the scheduling restrictions ALV

placed on Southwest made future business difficult. *See* Exhibit E. The inquiry regarding Bryan's affiliation with ALV in December 2020 was made solely for logistical and scheduling purposes, given the restrictions that had been placed on Southwest by ALV. Exhibit B at ¶10; Exhibit C at ¶12.

Moreover, Southwest did not cease working with ALV in 2019, as Mr. Perez alleges. *See* Exhibit A. In January 2020, Southwest contacted ALV to cover an upcoming deposition. *See* Exhibit F. Even after being informed of ALV's new software, Southwest continued to utilize ALV's videography services for that assignment. *Id*. Southwest declined to purchase ALV's transcript software service, explaining that it had already secured a court reporter and could obtain certified transcripts at significantly lower cost elsewhere. *Id*. Southwest's decision was made independently and based on business reasons, not collusion. In fact, the undisputed evidence shows that Southwest continued engaging ALV into 2020, undermining any claim that it participated in a group boycott beginning in 2019.

The onset of the COVID-19 pandemic in early 2020 significantly altered Southwest's deposition operations. Exhibit B at ¶7. During the remainder of 2020, Southwest had no in-person depositions in Mr. Perez's service areas, and videography for remote depositions conducted via Zoom was handled internally. *Id*. These operational changes further reflect that Southwest's decisions regarding Mr. Perez's services were driven by independent business needs and external circumstances, not by any alleged conspiracy.

Following these operational changes, Southwest made an independent decision to cease assigning work to ALV, based not only on the prior scheduling restrictions but also on Mr. Perez's subsequent unprofessional behavior during a phone call where he screamed, cursed, and acted aggressively toward Southwest personnel. Exhibit B at ¶9; Exhibit C at ¶11.This same concern

independently motivated Southwest to confirm with Walter Bryan that he was no longer affiliated with Mr. Perez before engaging his videography services in 2023. Exhibit B at ¶10; Exhibit C at ¶12. The mere fact that a business stops using a vendor's services does not give rise to an inference of conspiracy. As the Supreme Court has emphasized, the "freedom to switch suppliers lies close to the heart of the competitive process." *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 137 (1998).

In addition, Mr. Perez's own discovery responses further undermine his claims. Mr. Perez admitted that "Southwest stopped using Austin Legal Video not because of bad service but because Austin Legal Video could not take their work a week in advance." Exhibit D at Response No.2. Mr. Perez also admitted that the only evidence he has to support his claim against Southwest is his belief that "Southwest stopped using [ALV] after [it] developed [its] speech-to-text app." *Id.* at Response No. 12. Mr. Perez's responses confirm that Southwest's actions were the result of independent business considerations, not any agreement with others. Moreover, Mr. Perez's subjective belief, unsupported by objective evidence, is insufficient to create a genuine issue of material fact and does not permit a reasonable inference of concerted action under Section 1 of the Sherman Act.

This evidence falls far short of the standard required to survive summary judgment. Mr. Perez has failed to present any evidence that tends to exclude the possibility that Southwest acted independently or to establish any agreement involving Southwest. No reasonable factfinder could conclude that Southwest's business decisions were anything other than the result of independent judgment based on legitimate business concerns. In fact, Mr. Perez has identified no evidence that Southwest had any knowledge of, or involvement in, any alleged group boycott. The notion of a boycott originated solely from Mr. Perez's own speculation in 2021, after Southwest informed him that the reduction in work was due to scheduling limitations imposed by ALV. *See* Exhibit H.

Accordingly, Mr. Perez cannot satisfy his burden under Section 1 of the Sherman Act, and Southwest is entitled to summary judgment as a matter of law.

**B.    PLAINTIFF'S CLAIM UNDER THE TEXAS FREE ENTERPRISE AND ANTITRUST ACT ALSO FAILS FOR THE SAME REASONS AS HIS SHERMAN ACT CLAIM.**

The Texas Free Enterprise and Antitrust Act ("TFEAA") similarly prohibits "[e]very contract, combination, or conspiracy in restraint of trade or commerce." TEX. BUS. & COM. CODE § 15.05(a). The purpose of the Act is to "maintain and promote economic competition in trade and commerce occurring wholly or partly within the State of Texas and to provide the benefits of that competition to consumers in the state." TEX. BUS. & COM. CODE § 15.04. The TFEAA further provides that it "shall be construed to accomplish this purpose and shall be construed in harmony with federal judicial interpretations of comparable federal antitrust statutes to the extent consistent with this purpose." *Id*.

Because the TFEAA is construed consistently with federal antitrust law, and because Mr. Perez has failed to establish any violation of Section 1 of the Sherman Act for the reasons set forth above, Mr. Perez's TFEAA claim likewise fails as a matter of law. Mr. Perez has presented no evidence of any agreement or concerted action involving Southwest, nor any evidence that tends to exclude the possibility of independent action. Accordingly, summary judgment is proper on Mr. Perez's TFEAA claim for the same reasons that summary judgment is warranted on his Sherman Act claim.

**C.    PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS FAILS AS A MATTER OF LAW.**

In Texas, the elements of a claim for tortious interference with prospective business relations are: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to

prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

Critically, to satisfy the third element, Mr. Perez must show that Southwest engaged in conduct that was independently tortious or otherwise unlawful. As the Fifth Circuit has recognized, where a plaintiff's tortious interference claim is based on alleged antitrust violations, the claims "rise and fall together." *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Centers, Inc.*, 200 F.3d 307, 312–16 (5th Cir. 2000). Thus, because Mr. Perez's tortious interference claim depends entirely on the alleged antitrust violations, the failure of his Sherman Act and TFEAA claims necessarily defeats his tortious interference claim as well.

While Mr. Perez alleges that the defendants "willfully and maliciously interfered" with his business relationships by "pressuring each other and third parties not to work with Plaintiffs," he offers no evidence to support these accusations. Exhibit A at ¶87. There is no evidence that Southwest communicated or coordinated with any other defendant regarding Mr. Perez or ALV. Nor is there any evidence that Southwest pressured any third party to cease doing business with Mr. Perez. The undisputed evidence shows only that Southwest independently decided to stop assigning work to ALV based on scheduling limitations and unprofessional conduct. Although Southwest explained to Mr. Walter Bryan the reasons it no longer worked with ALV, it did not pressure Mr. Bryan, or any other third party, not to work with Plaintiff.

Because Mr. Perez cannot establish any violation of Section 1 of the Sherman Act or the Texas Free Enterprise and Antitrust Act, he likewise cannot demonstrate that Southwest's conduct

was independently tortious or unlawful. Without an underlying unlawful act, Mr. Perez's tortious interference claim cannot survive summary judgment. Accordingly, Southwest is entitled to summary judgment on Mr. Perez's claim for tortious interference with prospective business relations.

## CONCLUSION AND PRAYER

For the foregoing reasons, defendant, Southwest Reporting & Video Service, Inc., prays that the Court grant this Motion to Dismiss and Motion for Summary Judgment, that plaintiff Pasqual Perez, III take nothing as to all his claims, and grant defendant such other and further relief, both general and special, at law or in equity, to which defendant is justly entitled.

Respectfully submitted,

**DAW & RAY, LLP**

*/s/ Kyle Giacco*
Willie Ben Daw, III; SBN: 05594050
Email: wbdaw@dawray.com
Kyle Giacco; SBN: 07839150
Email: kgiacco@dawray.com
5718 Westheimer, Suite 1400
Houston, Texas 77057
(713) 266-3121 Telephone
(713) 266-3188 Facsimile

**ATTORNEYS FOR DEFENDANT SOUTHWEST REPORTING & VIDEO SERVICE, INC.**

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that a true and correct copy of the foregoing instrument to which this Certificate is attached has duly been served upon each party by facsimile, U.S. First Class Mail and/or using the ECF System for filing and transmittal of a Notice of Electronic Filing on this, the 30th day of April 2025.

*/s/ Kyle Giacco*

Kyle Giacco