IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AUSTIN LEGAL VIDEO, LLC, | § | |
| and PASQUAL PEREZ, III | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 1:23-CV-00421-DAE |
| | § | |
| DEPOSITION SOLUTIONS, LLC | § | |
| D/B/A LEXITAS, COURT REPORTERS | § | |
| CLEARINGHOUSE, INC., ALDERSON | § | |
| REPORTING COMPANY, INC., | § | |
| SOUTHWEST REPORTING & VIDEO | § | |
| SERVICE, INC., KENNEDY | § | |
| REPORTING SERVICE, INC., TEXAS | § | |
| COURT REPORTERS ASSOCIATION, | § | |
| INC., SPEECH TO TEXT INSTITUTE, | § | |
| INC., SHERRI FISHER, LORRIE | § | |
| SCHNOOR, SONIA TREVINO, | § | |
| DEPOSITION HOLDINGS, LLC, AND | § | |
| SHELLY TUCKER, | § | |
| | § | |
| *Defendants.* | § | |

---

## SECOND AMENDED COMPLAINT AND JURY DEMAND

---

## I.  INTRODUCTORY STATEMENT

1.      This antitrust action arises out of a group boycott by certain court reporting firms. Plaintiff Pasqual Perez created a software called Depo-Notes to provide speech-to-text transcription in depositions. The goal was to reduce costs and bring new technology to an industry suffering from high prices and a chronic shortage

of court reporters.[1]

2.      The Defendant court reporters didn't like this. It cut into their business model. So they blackballed Mr. Perez, launching a group boycott of not only Mr. Perez's new company, Depo-Notes, but also his existing videography company, Austin Legal Video. The goal, as the former president of the National Court Reporters Association (NCRA) put it, was to "**fend off the attack by the barbarians**."

3.      Astoundingly, some of the story is contained in emails, texts, and social media posts. For example, one court reporter texted Mr. Perez that "**I bet you would be welcomed back into the reporting community if you would just let the stupid software go. . . . Imagine how peaceful your life would be,**" and "**[i]t is my understanding you are being blackballed**." Another asked Mr. Perez to stop marketing the product after an "immense backlash" from court reporters who are "very much against your product." Others filed a baseless complaint against Mr. Perez with the Texas Judicial Branch Certification Commission and engaged in online media attacks to pressure Depo-Notes and Austin Legal Video to pull-down their product.

---

[1] Plaintiffs file this Amended Complaint in response to Southwest Reporting & Video Service, Inc.'s Motion to Dismiss. Federal Rule of Civil Procedure 15(a)(1) allows for a party to amend its pleading once as a matter of course within 21 days after service of a Rule 12(b) motion. Although Plaintiffs' original complaint sufficiently pled all of the required facts, Plaintiffs have amended to include some additional factual detail regarding Southwest and other defendants. *See Good River Farms, LP v. Txi Operations, LP*, 1:17-CV-1117-RP, at \*5-6 (W.D. Tex. Apr. 12, 2018) (holding original motion to dismiss moot in light of amended complaint).

4.      As a consequence of this illegal boycott, Mr. Perez's business was devastated. In addition to blackballing Depo-Notes, Defendants also destroyed Austin Legal Video, the videography business that Mr. Perez had run for many years, causing his work to dry up almost completely. And worse, Defendants prevented the nascent Depo-Notes from ever coming to market. Other companies have been highly successful in this space.

## II.  NATURE OF THE ACTION

5.      This is an action for damages under Section 1 of the Sherman Act, 15 U.S.C. § 1, and other state laws, including the Texas Antitrust Act, TEX. BUS. & COM. CODE §§ 15.04 *et seq.,* arising out of the unlawful and anticompetitive practices of Defendants. Plaintiffs Austin Legal Video, LLC ("Austin Legal Video") and Pasqual Perez (collectively, "Plaintiffs") allege as follows upon actual knowledge with respect to themselves and their own acts and upon information and belief as to all others:

## III. JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Plaintiffs' claims relating to violations of Section 1 of the Sherman Act, under 28 U.S.C. §§ 1331 and 1337, and 15 U.S.C. § 15. These actions have affected interstate commerce.

7.      This Court has personal jurisdiction over Defendants pursuant to Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, because each of the Defendants resides, is found, transacts business, or has an agent in this district. A substantial part of Defendants' wrongful acts occurred in and were directed to this district.

8.     Venue is proper in this judicial district under 15 U.S.C. § 22 and 28 U.S.C. § 1391. One or more of the Defendants reside, are licensed to do business, are doing business, transact business, are found or have agents in this district, and a substantial part of Defendants' wrongful acts occurred in and were directed to this district.

## IV. THE PARTIES

9.     Plaintiff Pasqual Perez, III is the owner of Depo-Notes and Austin Legal Video. Prior to starting Depo-Notes, Mr. Perez had been a successful legal videographer for over twenty-five years. He founded Austin Legal Video in 2014. Austin Legal Video did a thriving business, and had a number of employees, including videographers, an office manager, and IT personnel. Mr. Perez resides at 1601 Sahara Avenue, Austin, TX 78745-4955.

10.     Plaintiff Austin Legal Video is a Texas Limited Liability Company with its principal place of business at 1601 Sahara Avenue, Austin, TX 78745-4955. Austin Legal Video has provided legal videography services in Austin, Texas and the surrounding areas for 25 years. For the past five years, over ninety percent of Austin Legal Video's revenue for these legal videography services came from the large national or regional litigation support firms including Defendants. Approximately ten percent of Austin Legal Video's revenue derived from retention by court reporters who had been contacted and retained directly by their attorneys.

11.     Defendant Deposition Solutions, LLC d/b/a Lexitas ("Lexitas") is a litigation support firm (LSF). LSFs provide a sort of one-stop shop for attorneys

engaged in litigation-related discovery. Among the services provided, LSFs will arrange the logistics for court reporting and videography services as required by attorneys for use in depositions and other legal proceedings where a record is required or crucial. For example, an LSF would be responsible for arranging to have a certified court reporter and/or videographer with the requisite capabilities to attend a scheduled deposition as scheduled and specified by the LSF's customer attorneys. In some instances, the court reporters and videographers are employees of the LSF, but in many cases, the LSF will contract with independent court reporters and videographers to provide the necessary services. Lexitas is a Texas corporation with its principal place of business at 4424 Sam Houston Parkway N, Ste 420, Houston, Texas 77041. Lexitas may be served with process through its registered agent, Registered Agent Solutions, Inc., Corporate Center One, 5301 Southwest Parkway, Suite 400, Austin, Texas 78735. Lexitas did business with Plaintiffs prior to the boycott, but thereafter stopped sending him business. Specifically, Lexitas sent Plaintiffs approximately $41,417 in business in 2016, $44,702 in 2017, $119,600 in 2018, $151,558.14 in 2019, but only $32,048 in 2020, and zero in 2021 and 2022. Deposition Solutions, LLC is a wholly-owned subsidiary of Depo Holdings, LLC, which, on information and belief, may be served with process through its registered agent at the same address as Lexitas.

12. Most law firms prefer to use the one-stop-shop model offered by LSFs rather than hiring videographers and court reporters directly because the LSFs also provide a robust set of services related to all stages of litigation. Therefore, on most

occasions, while the LSF's customer is the attorney or law firm, the independent videographer's customer is the LSF.

13. Court Reporters Clearinghouse, Inc. ("CRC") is a Texas corporation with its principal place of business at 1225 North Loop W. Ste 327, Houston, Texas 77008. CRC may be served with process through its registered agent, Sheryl L. Holmes, 1225 North Loop West, Ste 327, Houston, Texas 77008, or wherever she may be found. CRC did business with Plaintiffs prior to the boycott, but thereafter stopped sending him business. Specifically, CRC sent Plaintiffs approximately $7,000 in business in 2016, $13,441 in 2017, $32,413 in 2018, $7,914 in 2019, and $538 in business in 2020.

14. Alderson Reporting Company, Inc. ("ARC") is a Delaware corporation doing business in Texas with its principal place of business at 1111 14th Street NW, Ste 1050, Washington, D.C. 20005. ARC may be served with process through its registered agent, Paracorp Incorporated, 2140 S. Dupont Hwy, Camden, DE 19934. ARC did business with Plaintiffs prior to the boycott, but thereafter stopped sending him business. Specifically, Alderson sent Plaintiffs approximately $3,685 in business in 2016, $5,324 in 2017, and $5,211 in 2018. This dropped to $1,223 in 2019, the year Mr. Perez released and began marketing Depo-Notes. Alderson sent approximately $431 of business in 2020, and $1,357 in 2021. Alderson had planned to contract with Depo-Notes to use its new service in or around March 2020. The meeting was later cancelled, due to "certain circumstances," on April 2. The circumstances were never revealed.

15.     Southwest Reporting & Video Service, Inc. ("Southwest") is a Texas corporation with its principal place of business at 826 Heights Boulevard, Houston, Texas 77007. Southwest may be served with process through its registered agent, Timothy McCarble, 909 Fannin Street, Ste 1630, Houston, Texas 77010. Southwest did business with Plaintiffs prior to the boycott, but thereafter stopped sending him business. Specifically, Southwest sent approximately $11,084 in business in 2016; $11,957 in 2017; $25,217 in 2018; but only $4,162 in 2019 (the year the boycott began); $1,296 in 2020; and $0 in 2020 and 2021. Further, Southwest refused to work with videographers affiliated with Plaintiffs, because of the boycott. When a videographer named Walter Bryan applied to work with Southwest on January 6, 2023, Southwest's scheduling coordinator responded with: "Also, I just need to ask, since you were previously affiliated with Austin Legal Video, are you still working with Trey Perez?" Today, Austin Legal Video's revenue is close to zero.

16.     Kennedy Reporting Service, Inc. ("Kennedy") is a Texas corporation with its principal place of business at 100 E. Whitestone Blvd, Ste 148, Cedar Park, Texas 78613. Kennedy may be served with process through its registered agent, Amy Burt, 100 E. Whitestone Boulevard, Ste 148, Cedar Park, Texas 78613. Lori Schnoor either owned Kennedy or worked as a court reporter for Kennedy at the time the relevant conduct described in this Complaint took place.

17.     Texas Court Reporters Association ("TCRA") is a Texas nonprofit corporation with its principal place of business at 4020 McEwen, Dallas, Texas 75244. TCRA may be served with process through its registered agent, Brooke C. Ingram,

110 East Corsicana, Athens, Texas 75751. On information and belief, a number of Defendants are members of TCRA, including but not limited to individual Defendants Lori Schnoor, Shelly Tucker, Sonia Trevino (a past president of the TCRA and current Chair of the Nominating Committee), and Sherri Fisher.[2] In addition, court reporters who work for Defendants Lexitas, Southwest, and Kennedy Reporting are members of the TCRA as well. Further, a number of other court reporting firms who stopped doing business with Plaintiffs, but which are not Defendants in this lawsuit, are also members of the TCRA.

18.     Speech to Text Institute, Inc. ("STTI") is a 501(c)6 Delaware non-profit corporation with its principal place of business at 315 W 36th St, New York, NY 10018. Speech to Text Institute may be served with process through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

19.     Court Reporter Defendant Sherri Fisher may be served with process at 457 Upper Elgin River Road, Elgin, Texas 78621 or wherever she may be found. Recently, on or about November 30, 2023, Mr. Perez arrived at a deposition in Temple, Texas, where Ms. Fisher was the court reporter. Ms. Fisher saw Mr. Perez and then walked out. The attorney at the deposition then asked Mr. Perez to leave, stating that he was being replaced by another videographer. On information and belief, Ms. Fisher refused to do her job in Temple, Texas unless Mr. Perez was

---

[2] *See, e.g.,* TCRA's website member search results, https://www.tcra-online.com/?pg=members&dirAction=SearchResults&fs_match=s&m_company=lexitas&seed=994776.

replaced, causing the litigants to incur more costs and waste time. In the past, Ms . Fisher and other court reporters taunted Mr. Perez, posting comments on Facebook such as "I think we've proven that we don't need your help, in our profession or yours." Further, Ms. Fisher and other court reporters taunted Mr. Perez, advertising that that there was plenty of videography business to go around, the implication being, just not for Plaintiffs.

20.     Court Reporter Defendant Lorrie Schnoor may be served with process at 2330 Vernell Way, Round Rock, Texas 78664 or wherever she may be found.

21.     Court Reporter Defendant Sonia Trevino may be served with process at 4733 Carroll Lane, Corpus Christi, Texas 78415 or wherever she may be found.

22.     Court Reporter Defendant Shelly Tucker may be served with process at 664 Little Bear Road, Buda, Texas 78610 or wherever she may be found.

## V. **NATURE OF THE ACTION**

24.     Defendant LSFs are competitors in the market for the provision of litigation support services. LSFs compete in markets for the sale of certified transcripts, non-certified transcripts, and legal videography, among others.

25.     Defendant Court Reporters are competitors in the market for the sale of certified transcripts and non-certified transcripts. Court reporters typically are employees or independent contractors of LSFs. On some occasions, when a law firm hires its court reporters directly, they are competitors of LSFs.

26.     Plaintiff Austin Legal Video is a competitor in the market for legal videography services, and typically provides those services to attorneys through

contracts with LSFs. Depo-Notes was created by the founder of Austin Legal Video as a voice recognition software that could provide innovative and necessary recordings for depositions and other legal proceedings.

27.     Depo-Notes is a STT application that converts a video recording of a deposition into a rough transcript complete with a word index and links back to the video. This product competes directly with the court reporters and LSFs.

28.     From the day of Depo-Notes birth, the court reporting industry, aided by their trade associations and litigation support firms, have sought to kill this nascent competitor in the crib, along with any other offspring exhibiting similar DNA—or at least, delay its development to forestall this threat to their business.

29.     Battles between incumbents and nascent competitors armed with new technology have been around since one of our early ancestors showed up with a wheel at the local sledge shop.

30.     As Steve Townsend, President of the STTI (and former president of the National Court Reporters Association (NCRA) recently observed, the court reporting industry has been engaged in a similar battle for some time now. "New entrants will disrupt the [court reporting] market with new business models. Sometimes the incumbents are able to fend off the attack by the barbarians…."

31.     STTI is a trade association whose primary function appears to be to assist the court reporting industries' efforts to repel these "barbarians."

32.     The barbarians to which Mr. Townsend was referring are companies that would use STT or artificial intelligence (AI) based technologies to provide

products and services historically viewed as the sole province of court reporters, i.e., that compete directly with Defendants.

33. The particular barbarian in this instance is Depo-Notes. Depo-Notes was the brainchild of Pasqual Perez, also the owner of Austin Legal Video, a legal videography company that has operated in the litigation support industry for 25 years.

## The Court Reporting Industry

34. Court reporting and related deposition-oriented services are sold in a somewhat distorted market. The entity that selects the service provider and negotiates price (the attorney or law firm) is often not the entity that ultimately ends up with the bill (the client). In most instances, the attorney will arrange for the required services in the required locations and pass the cost to the client. Some larger more sophisticated companies that are regularly involved in litigation may seek volume discounts by contracting directly with one or more litigation support firms or court reporters.

35. Court reporters market their services directly to attorneys as well as via subcontract with LSFs such as Defendant Lexitas. These LSFs account for a significant percentage of the deposition-related work. Law firms, attorneys, and more and more often large corporations that tend to see significant amounts of litigation, turn to these regional or national LSFs to handle the staffing of required depositions. Typically, these large LSFs will subcontract the actual deposition work to

independent court reporters and videographers – although some employ court reporters directly.

36.     Because of their position in the marketplace, these large LSFs are the preferred channel for any company seeking to offer any discovery or deposition-related service to law firms and attorneys (and large corporations). That is because many of these firms opt for the simplicity of a single point of contact regardless of the geographic location of the depositions.

### Innovative Technology Not Welcome in Court Reporting Industry

37.     While STT and other AI technologies have been around for years, they have played a marginal role in this marketplace, largely due to the efforts of court reports, their trade associations, and interest groups.

38.     As a result of the above market structure, a company seeking to offer a product to law firms for use vis-à-vis a deposition has basically two channels – direct to law firms or via these large LSFs.

39.     Court reporters and LSFs offer attorneys a variety of services, including certified transcripts of proceedings such as depositions, as well as uncertified transcripts provided on an expedited basis – sometimes referred to as roughs. In most jurisdictions, including Texas, only certified court reporters may provide certified transcripts of proceedings. For uncertified, often expedited, transcripts, there is no such proscription.

40.     In 2019, Depo-Notes and Austin Legal Video began to market a service whereby using speech-to-text (STT) technology they could provide customers with

non-certified transcripts of any proceeding that had been video or sound recorded. Such transcripts could include word indices as well as links to the video and could be provided on a highly expedited basis. Such a product would compete directly with the stenographic court reporters' roughs.

41. When Depo-Notes began offering this service, it could only offer uncertified transcripts. Still, the offering of these expedited uncertified transcripts rendered from sound or video recordings posed two significant competitive threats to the incumbent certified court reporters. First, it was an immediate threat to their revenue, as a considerable portion of court reporters' revenues (and profits) comes from the provision of the uncertified roughs. Second, while to-date, technologies such as STT have not been accepted by most certifying bodies as sufficiently reliable to produce certifiable transcripts, inevitably they will be, particularly given the growing shortage of certified stenographic court reporters.[3] Entry into the related non-certified transcript market, for various reasons discussed below, would speed up STT entry into the certified transcript market and expedite the development of a competitive alternative to certified transcripts prepared by stenographic reporters.

---

[3] https://www.ncra.org/docs/default-source/uploadedfiles/education/schools/2013-14_ncra_-industry_outlook-(ducker)8ef018c4b8ea486e9f8638864df79109.pdf?sfvrsn=c7a531e2_0.

## VI. GENERAL ALLEGATIONS

**A.** **ALV's Relationships with LSFs and Industry Participants before Depo-Notes.**

42.    Prior to founding Depo-Notes, Mr. Perez had been a legal videographer for over twenty-five years. In 2014, he founded Austin Legal Video. By 2019, the company had a number of employees, including other videographers, an office manager, an IT person, and others. Austin Legal Video worked with many different court reporters and LSF's. Austin Legal Video's biggest client was Lexitas, and most of its work came from referrals by court reporters.

43.    In early 2019, Mr. Perez began developing the Depo-Notes software. Later that year, Mr. Perez began demonstrating the technology to court reporters, pitching it as a way to save costs on deposition transcripts, and in particular for uncertified rough transcripts. Some court reporters were interested in the technology. But later that year, toward the summer of 2019, Mr. Perez began to realize that he was receiving less videography business. Clients and court reporters that had worked with him for years were no longer calling him. The reason would soon become clear.

44.    In November 2019, Defendant Lexitas retained Austin Legal Video – one of their regular contract videographers in the Austin areas – to video-record a Video only deposition due to the court reporter shortage. No court reporter was present at that deposition. In conjunction with the job for Lexitas, Austin Legal Video sent Lexitas a sample transcript of the videoed deposition prepared with the Depo-Notes software and inquired whether Lexitas would be interested offering this expedited, uncertified transcript to their customers as part of their litigation support services.

In response, on November 25, 2019, Austin Legal Video received a response from one of Lexitas' production managers, "kudos to you for stepping up to the plate my friend. I think this is an exciting step. I don't have the final say, but you've got my vote." Despite Lexitas' product manager's view that the Depo-Notes application would be a welcomed product by customers, the votes and voices of the court reporters carried more weight. Lexitas has claimed that they stopped using Plaintiffs because Plaintiffs were marketing their product to attorney clients during depositons. To be clear, Plaintiffs never marketed the product during depositions, or to Lexitas' clients. They marketed it to Lexitas itself. As late as January 2020, Lexitas was giving Plaintiffs their office keys to let in clients, belying any notion that Lexitas thought Plaintiffs were trying to take clients.

45. Other court reporting firms that had hired Plaintiffs expressed similar sentiments. The President of CRC, Sherry Schritchfield, wrote in a September 27, 2019 email that court reporters were "concerned" about Plaintiffs' proposed rough draft offerings: "As you can imagine, the reporters are seeing that service as direct competition. I would like to hear more about your offering and how you envision the impact on court reporters, if any." CRC later stopped sending business to Plaintiffs.

46. In November, Mr. Perez was explicitly told by a court reporter that he was being blackballed. On November 30, 2019, Shelly Tucker, a court reporter working for Lexitas, wrote in an email that:

> **It is my understanding you are being blackballed.** Is what you hope to profit from this technology going to be worth what you lose in other business? From a reporter perspective, you have essentially created technology to prove that court reporters aren't needed. . . . **The**

**reason you only have one reporter agreeing to certify your transcript is because the rest of us know we will be blackballed if we agree to help you.** . . . It would have to be significant page rate for me to risk being blackballed in this small community. **You can drop this whole idea and get your business back** or you can walk away from reporters and continue this new direction.

47.     This was an interesting note from a company about to join in on the blackballing. On January 12, 2020, Austin Legal Video received an email from Bo Davis, a regional director at Lexitas, advising that they were witnessing an "immense backlash" from the court reporters regarding this product and requesting that Austin Legal Video cease marketing the product:

> I am becoming very concerned as there has been an **immense backlash** on social media regarding your product. **The reporters are very much against your product and it is filtering into agencies which utilize your services, etc.**
>
> You and your team are a valuable asset to us and I want to continue our relationship, but **I need you and your team not to continue to advertise your product directly to our court reporters**. I know what you are trying to do and I don't discount your product at all, but **I am feeling that this could cause a backlash from our reporters which could cause them to no longer wish to cover work from our firm if they have a sense that we are looking to put them out of business**.

48.     On January 16, Mr. Perez wrote back "Here's the reporters only solution to the shortage (Let's Blackball Trey and his team)," to which Bo Davis responded "Yes, reporters have blinders on right now." On February 3, 2020, Shelly Tucker, the court reporter for Lexitas, wrote that "**I bet you would be welcomed back in the reporting community if you would just let the stupid software go** but for some

reason you just wont let it go. **Imagine how peaceful your life would be if you would just let it go."**

49.     Nor were Depo-Notes and Austin Legal Video the only targets of the boycotting court reporters. For instance, a colleague of Mr. Perez named Bradley Allen who owned a litigation support firm called Litigation Bids told Mr. Perez on or about October 22, 2020 that the took down an article critical of how court reporters were handling new technology after some court reporters "made some serious threats . . . It's obviously a touchy subject. . . . ." . And Stenograph, Inc., the company that supplies court reporters with their stenographic typing device, experienced the ire of the court reporters when it added the image of a sound wave to its logo, conjuring fears of speech-to-text technology taking over the industry.[4]  Stenograph announced its automatic speech recognition product, Phoenix, around November 2021, by which point Depo-Notes already had a working version of its own software.  Another videographer who used to work for Plaintiffs, Walter Bryan, was also boycotted by Lexitas and others.

50.     Plaintiffs planned to become a licensed court reporting company, and were in the process of doing so. On or about February 18, 2020, Plaintiffs created a profile for the Court Reporter Certification Program with the JBCC. At the time Plaintiffs were considering merging Austin Legal Video into a court reporting firm.[5]

---

[4] *Id.*
[5] It was not yet determined which entity would be the certified court reporting company, and so Plaintiffs plead that all three of Austin legal Video, Depo-Notes, and Mr. Perez planned to do so.

Plaintiffs followed up in May 2020, but was told that the JBCC's licensing program was experiencing technical issues. Mr. Perez followed up in May and June and asked for a time frame for registration, concerned that the complaint filed with the JBCC by the court reporters might be holding up his licensure. But Mr. Perez was told that the system was still down. Mr. Perez intended to continue to seek licensure, but the boycott that destroyed his businesses prevented him from obtaining work in the industry.

51.    Plaintiffs were in the early stages of the Depo-Notes product when they were boycotted by the court reporters. It was not yet known whether Austin Legal Video would become a certified court reporting firm itself, or whether they would offer a separate product through Depo-Notes.

52.    If Austin Legal Video obtained licensure as a court reporting firm, they would have had the ability to conduct depositions themselves, and use the Depo-Notes software on the back end to cut costs, as they offered to Lexitas.

53.    Alternatively, Austin Legal Video planned to offer the Depo-Notes software to court reporting companies as a standalone product for their own use. Such a product is not prohibited by the Texas Government Code. For example, Verbit is a $2 billion dollar company which provides speech-to-text transcription technology, including in the court reporting industry.[6] Many court reporting companies use Verbit's software on the back end, and there is no allegation that Verbit's software

---

[6] https://venturebeat.com/ai/ai-powered-voice-transcription-startup-verbit-secures-250m/;

violates Texas law. Other companies in this space which offer speech-to-text transcription products in the court reporting industry include Rev[7] and Parrot,[8] to name a few. In addition, there is Stenograph, the company that makes many of the court reporters' transcription devices. Stenograph has a product called Phoenix, which is an Automatic Speech Recognition (ASR) engine built specifically for the court reporting industry. According to their website, "Phoenix is a powerful tool allowing reporters to become more productive and save time during transcript production, thereby becoming more efficient."[9] Shelly Tucker, in talking about Stenograph with Plaintiffs over email, described Stenograph's product as "far superior" to Depo-Notes.

The President of Stenograph was the Vice President of the Board of Directors of the Speech to Text Institute.

## B.    The Sham Litigation

54.    The Defendant court reporters also used legal and regulatory means to attempt to suppress Depo-Notes new technology. On or about February 5, 2020, the president of the TCRA, Lorrie Schnoor (and the President of Defendant Kennedy Reporting), with support from its members, filed a baseless complaint against Austin Legal Video and Depo-Notes with the Texas Judicial Branch Certification Commission ("JBCC"). One person with knowledge of the court reporters' efforts described this complaint as the test case the court reporters had been looking for the

---

[7] https://www.rev.com/blog/resources/speech-recognition-for-court-reporting.
[8] https://www.parrot.us.
[9] https://www.stenograph.com/phoenix.

opportunity to bring for months as part of their coordinated efforts to stop the incursion of STT barbarians. The JBCC dismissed the complaint. Despite that, Ms. Schnoor, through her attorney, asked the JBCC for reconsideration of the dismissal. A video of the hearing regarding the request for reconsideration shows that the request was denied a full eight seconds after the moving attorney representing the TCRA completed his argument for reconsideration. On information and belief, Lorri Schnoor used her position as President of the TCRA in order to direct and further the boycott against each of Mr. Perez, Austin Legal Video, and Depo-Notes, by way of the JBCC complaint as well as other, illegal means.

55. This was not the only time the court reporters used legal and regulatory means to suppress new technology. Court reporters led by Jo Ann Byles Holmgren filed a complaint with the JBCC against a company called StoryCloud, another company attempting to use STT technology to transcribe depositions. After the complaint, the company later shut down.

## C. **Threats and Group Boycott**

56. Around the same time as Lexitas' warning, Lexitas and other litigation support firms including CRC and ARC simultaneously ceased doing business with Austin Legal Video or Depo-Notes.

57. There is direct evidence of a group boycott. For instance, Shelly Tucker wrote that "it is my understanding that you are being blackballed . . . the rest of us know we will be blackballed if we agree to help you. . . . It would have to be significant page rate for me to risk being blackballed in this small community." The Lexitas

product manager warned of an "immense backlash on social media regarding your product. The reporters are very much against your product . . . ." Stenograph took down an article after court reporters "made some serious threats." Videographer Walter Bryan was subject to a boycott as well for working with Plaintiffs. Court reporters discussed Depo-Notes in private Facebook group chats. Depo-Notes was specifically discussed at a February 23, 2020 meeting of the TCRA in Corpus Christi, wherein Depo-Notes first social media salvo was shown to the members, right around the time the boycott began. On information and belief, discussions at the meeting, and surrounding the meeting, furthered the boycott. Further, there was the baseless grievance filed against Plaintiffs by the president of the TCRA. A person with knowledge of this told Plaintiffs on or about February 15, 2020 that this was a "test case that's been planned by Court Reporters for some time." A similar complaint was filed against StoryCloud. And the President of the STTA spoke of "fending off the barbarians." All of this indicates that this was more than mere unilateral action by individual court reporters or firms. In addition, there is evidence of parallel conduct— that is, Defendants stopped using Plaintiffs' services around the same time. To be clear, this boycott was in place against all of the Plaintiffs—Mr. Perez, Austin Legal Video, and Depo-Notes—each of them suffered harm from the boycott. For instance, the boycott caused Austin Legal Video's business to drop across the board to near-zero from the court reporting firms, many of whom were members of the TCRA.

58. Incumbents are of course free to attempt to "fend off the barbarians," but there are some rules. Incumbents may seek to provide superior services and

better prices. They may themselves incorporate some of the newer technologies to assist them in their efforts. What they may not do is organize boycotts comprised of horizontal competitors at multiple levels within the court reporting supply chain. This, however, is exactly what has occurred vis-à-vis Depo-Notes.

### D.   Court Reporting Firms Book Depositions Without Court Reporters

59.   Plaintiffs have been asked to take video-only depositions without a court reporter present, including by some of the Defendants themselves. On information and belief, this is not uncommon.

60.   On or about November 22, 2019, Bo Davis of Lexitas emailed Plaintiffs and said, regarding a deposition in the case of Urich v. Bowers, in Austin, Texas, that "Videographer who is a notary to swear in the witness. **No court reporter will be present**."

61.   On or about August 28, 2019, Defendant CRC reached out to Plaintiffs for help with a **video-only deposition, "since we cannot find a reporter to cover**." CRC asked Plaintiffs: "Do you have a videographer that is a notary that can record the attached notice?"

62.   On February 14, 2020, Defendant Southwest asked Plaintiffs: "We just had a late request for **video only depo** Monday at 1pm in San Antonio. Any chance you all can cover?" Further, in a deposition notice wherein Southwest was listed as the LSF, states that "This deposition will be taken before a Videographer who is a Notary Public, authorized to administer oath, and authorized by the TEXAS RULES OF CIVIL PROCEDURE to take the deposition."

## VII.  **THE RELEVANT PRODUCT AND GEOGRAPHIC MARKETS**

63.      There are several relevant product markets: the certified transcripts market, the non-certified transcripts market, the video recordings market, and the speech-to-text market. The geographic scope of each of the markets is the same.

**A.**      **The Relevant Product Markets**

     **1.**  **The Certified Transcripts Market**

64.      In the Certified Transcripts Market, Certified court reporters provide certified transcripts of proceedings such as hearings, trials, and depositions.  They are licensed by a branch of the judiciary in the state in which they practice. In Texas, for example, the Judicial Branch Certification Commission (JBCC) oversees the certification, registration, and licensing of court reporters.

65.      Court reporters create transcripts by listening to the deposition or a recoding thereof and transcribing the proceeding via a stenotype machine on which the reporter essential types (albeit in specialized shorthand notations) the transcript. A certified court reporter may attend the proceeding live or via video conference, or may produce the transcript by listening to a recording of the hearing or deposition. The incidence of recording and then transcribing proceedings has increased in the past years as a result of a growing shortage of court reporters, and the difficulties in having live depositions and hearings during the pandemic.

66.      Court reporters provide a variety of transcript types as well as electronic versions of the certified transcript. Court reporters, responding to the needs of trial counsel, also provide expedited copies of transcripts, often within 12 hours. These

expedited transcripts are not certified at this point, but are useful to counsel for various purposes such as witness preparation.

67.     When serving directly in a court proceeding, court reporters' rates for their services generally are capped in judicial or local/state rules. In the majority of situations, however, such as depositions, their prices are market driven. If speech-to-text technology of the type that Depo-Notes offered was approved for use in certified transcripts, this could yield significantly lower prices for those involved in the legal process.

### 2. **The Non-Certified Transcripts Market**

68.     Rough transcripts provided on an expedited basis by certified court reporters for a surcharge. In most instances, customers will purchase both versions of the transcript—certified and non-certified—from the LSF (or directly from the court reporter in rare cases). Potential competitors in this market include firms with STT capabilities, like Depo-Notes. Depo-Notes can convert a video recording or voice recording into a written transcript. This transcript cannot be certified because only certified court reporters can provide certified transcripts. However, the transcripts created by Depo-Notes would directly compete with the rough drafts offered by certified court reporters.

### 3. **The Legal Videography Market**

69.     Plaintiff Austin Legal Video competes in the market for legal videography services. Many if not most depositions are videotaped. This market may

include companies that specialize in legal videography, as well as broader litigation support or court reporting firms that offer legal videography as one of their services.

**B.**     **The Relevant Geographic Markets**

70.     The relevant scope of the certified and uncertified transcript market is both local and national in the United States, depending on how the transcripts are created—i.e., whether they involve physical attendance, or virtual attendance. All states use court reporters for both certified and uncertified transcripts. Likewise, all states utilize legal videography services for depositions. And speech-to-text technology such as Depo-Notes was providing can and is used throughout the United States. In some cases, clients want local services with in-person attendance, whereas in others, virtual services can be provided nationally.

71.     In addition to depositions in Texas state court cases, Plaintiffs also compete in the market for depositions in Texas federal cases. In federal cases, a court reporter is not required to be present. In addition, Plaintiffs compete in the market for depositions in other states, not all of which require a court reporter to be present during depositions.

## VIII.   **HARM TO COMPETITION**

72.     Since Defendants' coordinated conduct began, Austin Legal Video has lost a substantial portion of its revenue. Worse, Defendants entirely prevented Depo-Notes from entering into the non-certified, and ultimately, certified transcripts markets, as well as the general speech-to-text market. On information and belief, this boycott is not limited only to Plaintiffs. For example, Steve Townsend, President of the STTI's "barbarians" speech; the threats made to Stenograph; the boycotting of

others such as Walter Bryan; the "immense backlash" from court reporters that the Lexitas product manager referred to; the fact that the regulatory grievance filed against Plaintiffs with support of the TCRA members was referred to as a "test case;" and more. Further, the mere fact that there is no product which does what Depo-Notes was planning to do—that is, create an instant transcript on site with speech-to-text, rather than by using court reporters—is itself evidence of the conduct alleged. By preventing entry of this competing technology, Defendants have decreased quality and raised prices to consumers. For example, Plaintiffs' cost to take a transcript recorded by Depo-Notes' software and have someone finish it was approximately $1.50 per page, and Plaintiffs offered to charge Lexitas approximately between $2 and $2.50 per page for this, which is less than half of what was being charged by court reporters.

## IX. **PLAINTIFF'S ANTITRUST INJURY AND STANDING**

73.     As explained above, Defendants' anticompetitive and unlawful conduct has reduced competition by eliminating consumer choice.  The very same conduct that is harming consumers, and preventing effective competition by STT—is what has harmed Plaintiffs.

74.     There is no procompetitive justification for the behavior alleged above, all of which unreasonably restrained trade and decreased competition in the relevant markets. To the extent that any procompetitive business objectives exist, any such objectives could have been achieved by less restrictive means than eliminating all competition in the Non-Certified Transcripts and STT Markets.

75.     The same anticompetitive and unlawful conduct described above to competition and consumers that has caused this harm to competition in the relevant markets, has harmed Plaintiffs. As a direct result of Defendants' unlawful acts, Austin Legal Video has lost customers and been effectively precluded from capturing new customers. Additionally, Depo-Notes has been completely excluded from the marketplace. This harm confers antitrust standing upon Austin Legal Video and Depo-Notes to rectify the antitrust injury that Defendants have caused.

## FIRST CLAIM FOR RELIEF

### (Group Boycott – Per Se Violation of Sherman Act, 15 U.S.C. § 1 – by All Defendants)

76.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

77.     Defendants are horizontal competitors in each of the relevant antitrust markets alleged in this Complaint. Motivated by a common interest in keeping Plaintiffs' technology from the market, which would have cut into their profits, Defendants agreed that they would refuse to deal with Depo-Notes, Austin Legal Video, and Pasqual Perez, and pressured others not to deal with Plaintiffs either.

78.     Defendants' agreement constitutes a *per se* unlawful group boycott. Alternatively, even if the agreement between Defendants is not a per se unlawful group boycott, their agreement constitutes an unlawful restraint under the rule of reason.

79.     Defendants' unlawful group boycott has no procompetitive benefits, and to the extent it did, they would be far outweighed by the substantial anticompetitive

harms of that conduct. Defendants' anticompetitive and unlawful conduct has reduced competition in the Non-Certified Transcripts Market by eliminating consumer choice, so that the market is limited only to Defendants' Certified Transcript offerings. To the extent that any procompetitive business objectives exist, any such objectives could have been achieved by less restrictive means than eliminating all competition in the Non-Certified Transcripts and STT Markets.

80.     The same anticompetitive and unlawful conduct described above that has caused this harm to competition in the relevant markets, has harmed Plaintiffs. As a direct result of Defendants' unlawful acts, Austin Legal Video has lost customers and been effectively precluded from capturing new customers. Additionally, Depo-Notes has been completely excluded from the marketplace for uncertified transcripts, speech-to-text, and ultimately, the certified transcripts market.

81.     As a result of their unlawful group boycott, Defendants have caused actual injury to competition in the form of higher prices, lower output, reduced innovation, and decreased quality in relevant markets. Plaintiffs have been, and will continue to be, directly and proximately injured by Defendants' unlawful group boycott and the damage it has caused to free and fair competition in the relevant markets.

## SECOND CLAIM FOR RELIEF

### (Group Boycott and Concerted Refusal to Deal – Texas Fair Enterprise & Antitrust Act, TEX. BUS. & COM. CODE § 15.05(a) Against All Defendants)

82.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

83. As alleged herein, Defendants' group boycott and concerted refusal to deal constitute unlawful practices in violation of TEX. BUS. & COM. CODE § 15-05(a). Defendants' agreement constitutes a *per se* unlawful group boycott. Alternatively, their agreement constitutes an unlawful restraint under the rule of reason with no procompetitive benefits, or which procompetitive benefits are outweighed by the substantial anticompetitive harms.

84. As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

### (Tortious Interference with Existing and Prospective Business Relations Against All Defendants)

85. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

86. Plaintiffs had contracts with Defendants, as well as with other LSF's, court reporters, videographers, and other legal professionals. Plaintiffs further had a reasonable probability of entering into additional contracts and/or business relationships with Defendants and others.

87. Defendants willfully and maliciously interfered with those contracts by pressuring each other and third parties not to work with Plaintiffs. Defendants' actions interfered with existing contracts and prevented the formation of new contracts and relationships, and Defendants lacked privilege or justification for doing so.

88. Defendants' actions were a proximate cause of injury to Plaintiffs, and Plaintiffs were actually injured by this conduct.

## X.  RELIEF REQUESTED

WHEREFORE, Plaintiffs, Austin Legal Video and Pasqual Perez demand judgment in their favor, and against Defendants, plus the following additional relief:

A.    A permanent injunction enjoining and restraining Defendants, their officers, agents, servants and/or employees and all persons in active concert with them from engaging in any other form of predatory or anticompetitive behavior;

B.    Damages in an amount to be proven at trial;

C.    Treble damages on Plaintiffs' antitrust claims;

D.    Reasonable attorneys' fees and costs;

E.    Pre- and post-judgment interest at the highest allowable legal rates; and

F.    Such other and further relief as the Court deems just and proper.

## XI. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated: February 16, 2024          Respectfully submitted,

*/s/ Dov Preminger*
Dov Preminger
**Preminger PLLC**
State Bar No. 24098280
dov@premingerlaw.com
106 E 6th St. #900-211
Austin, TX 78701

Telephone: (512) 610-3503

**ATTORNEY FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on February 16, 2024, all counsel who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system.  The following are being served by first class mail:

Greg Kohn,
Executive Manager
Speech to Text Institute, Inc.
16 Patterson Avenue
Titusville, NJ 08560

                             */s/ Dov Preminger*
                             Dov Preminger