**DEFENDANT SOUTHWEST REPORTING & VIDEO SERVICE, INC'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS**

INTERROGATORY NO. 1: Identify all individuals and entities you are aware of who participated in or had knowledge of the alleged group boycott, including their full names, addresses, and specific roles within their respective organizations.

 ANSWER: DEPOSITION SOLUTIONS, LLC D/B/A,LEXITAS, COURT REPORTERS CLEARINGHOUSE, INC., ALDERSON REPORTING COMPANY, INC., SOUTHWEST REPORTING & VIDEO SERVICE, INC., KENNEDY REPORTING SERVICE, INC., TEXAS COURT REPORTERS ASSOCIATION, INC., SPEECH TO TEXT INSTITUTE, INC., SHERRI FISHER, LORRIE SCHNOOR, SONIA TREVINO, AND SHELLY TUCKER.

LISA MIGLIORE-BLACK CSR., JOANN BYLES-HOLMGREM, CSR., SHAUNESSY CARBAIA, CHARLENE DEAJON, SHERRI SCHRITCHFIELD, PAIGE WATTS, CSR., MICHAEL JOHNSON,CSR. PAM CODER, CSR., BRAD LOVE with ANGEL PRODUCTIONS, US LEGAL, ESQUIRE, APRIL BALCOMBE, CSR., SAMMY RAGLAND with AUDIO VISION, LISA VENATOR-MORTON, CSR. and  DELLA ROTHERMEL, CSR.

INTERROGATORY NO. 2: Provide a detailed description of the nature of the group boycott as alleged in your complaint, including specific actions taken by Southwest that you contend constitute a boycott. Additionally, identify any other persons or entities involved in these actions alongside Southwest.

ANSWER: Plaintiffs do not have all the production to give a detailed description of the specific actions Southwest took to constitute a boycott. What we do know is that Southwest stopped using Austin Legal Video not because of bad service but because Austin Legal Video could not take their work a week in advance. They claim that upper management somehow communicated with scheduling to take Austin Legal Video off their preferred vendor list. Yet in discovery no such communication was ever produced. Cancellations from Southwests clients also were not produced to support Southwest's position. Southwest also had to make sure that Walter Bryan was not affiliated with Trey Perez before it would consider him. Southwest knows that Depo-Notes being excluded

from the lawsuit was an incorrect ruling by the judge because Southwest Reporting was the largest user of our video only services (NO REPORTER). If the judge was right then every single deposition that we took or any other videographer took without a reporter would be inadmissible.

INTERROGATORY NO. 3: Identify and describe all forms of communication (written, oral, electronic, or otherwise) between Southwest and other defendants, or between any defendant and a third party, regarding the alleged group boycott.

ANSWER: The communication with Walter Bryan about overflow work and making sure Trey was not in the picture.

INTERROGATORY NO. 4: Identify and describe all communications (written, oral, electronic, or otherwise) between you and Southwest concerning Southwest's capacity to schedule depositions with ALV and any indications given by Southwest regarding future business opportunities.

ANSWER: I don't have any

INTERROGATORY NO. 5: Describe the standard business practices in the deposition videography industry related to the scheduling of services, including typical timelines from initial scheduling to the deposition, standard cancellation policies, and common reasons for cancellations.

ANSWER: The standard operating procedure for deposition videography was that a court reporting firm would schedule a deposition with us for video. Usually via an email .It could be with or without a reporter. In cases where a reporter would not be present we would make sure the videographer was a notary public. We would receive confirmation that the deposition was going forward the day before. We would shoot the deposition and fill out the client's paperwork with copy orders and signatures from the taking attorney. The videos and paperwork would be uploaded and sent to the court reporting firms usually the next day along with an invoice.

INTERROGATORY NO. 6: Identify all entities for which you have limited the scheduling of deposition videography services, including the date each restriction was implemented, the specifics of these restrictions, and the reasons for their implementation.

ANSWER: Southwest was the only one

INTERROGATORY NO. 7: Provide a detailed account of the economic impact that the alleged group boycott has had on your business, including but not limited to loss of revenue, customers, or market share.

ANSWER: The business does no longer do business . The alleged boycott was successful.

INTERROGATORY NO. 8: Detail any steps you have taken to mitigate the damages caused by the alleged group boycott, including efforts to secure alternative customers or business partners.

ANSWER:  I began doing overflow work for other videographers and trying to get direct attorney clients. I was kicked out of a deposition in Temple, Texas by Sherri Fisher and Sherry Scritchfield and Court Reporters Clearinghouse. I also lost a new direct client because the court reporter from Esquire complained about me because I didn't want to give away my work product to her for free.

INTERROGATORY NO. 9: Describe any non-economic impacts that the alleged group boycott has had on your business, such as reputational harm, loss of goodwill, or operational disruptions.

ANSWER: There is no more business.

INTERROGATORY NO. 10: Identify and describe any contracts, agreements, or other legal obligations that you believe the defendants violated in connection with the alleged group boycott.

ANSWER: Objection, calls for a legal conclusion.

INTERROGATORY NO. 11: If you contend that a conspiracy existed between Southwest and any other defendants to engage in a group boycott, identify all evidence supporting this contention.

ANSWER: I am not aware of the communications that Southwest received from reporters regarding my company and myself but I believe they exist. I believe that Southwest could easily support their claim on the cancellations by producing the emails from their clients cancelling the depositions.

INTERROGATORY NO. 12: If you contend that Southwest specifically intended to harm your business, whether through the alleged group boycott or otherwise, identify all evidence supporting this contention.

ANSWER: The only evidence I have is the fact that Southwest stopped using us after we developed our speech to text app. They claim because we couldn't schedule a week in advance we deserved to be taken off the vendor list. We reached out to Southwest about the app but got no response.