IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AUSTIN LEGAL VIDEO, LLC, DEPO-NOTES, LLC, and PASQUAL PEREZ, III,<br><br>Plaintiffs,<br><br>v.<br><br>DEPOSITION SOLUTIONS, LLC D/B/A LEXITAS, COURT REPORTERS CLEARINGHOUSE, INC., ALDERSON REPORTING COMPANY, INC., SOUTHWEST REPORTING & VIDEO SERVICE, INC., KENNEDY REPORTING SERVICE, INC., TEXAS COURT REPORTERS ASSOCIATION, INC., SPEECH TO TEXT INSTITUTE, INC., SHERRI FISHER, LORRIE SCHNOOR, SONIA TREVINO, and SHELLY TUCKER<br>Defendants. | § § § § § § § § § § § § § § § § § § § § § § §  Case No. 1:23-cv-00421 |

**DEFENDANT SOUTHWEST REPORTING & VIDEO SERVICE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

Defendant, Southwest Reporting & Video Service, Inc. (hereinafter "Southwest"), files this Reply in Support of its Motion to Dismiss and Motion for Summary Judgment under Rules 12(b)(1) and 56 of the Federal Rules of Civil Procedure requesting that the Court enter judgment that the Plaintiff Pasqual Perez, III take nothing as to all claims asserted by him and, in support thereof, would respectfully show the Court as follows:

### I.   BACKGROUND

Mr. Perez brings claims under Section 1 of the Sherman Act, 15 U.S.C. § 1, as well as under state law, based on alleged unlawful and anticompetitive conduct. On April 30, 2025, pursuant to FED. R. CIV. P. 12(b)(1) and 56(b-c), Southwest filed its Motion to Dismiss and

Motion for Summary Judgment (Document No. 108). On May 9, 2025, Mr. Perez filed his Response to Southwest Reporting & Video Service, Inc.'s Motion to Dismiss and for Summary Judgment (Document No. 110). Southwest now responds with a Reply in Support of their Motion to Dismiss and Motion for Summary Judgment for the reasons set forth below.

## II. ARGUMENT AND AUTHORITIES

Mr. Perez's response to Southwest's Motion to Dismiss and Motion for Summary Judgment begins with a series of arguments that have no bearing on the issues before the Court. *Id*. Rather than addressing the dispositive issues, Mr. Perez devotes substantial portions of his brief to grievances concerning parties no longer in the case and attempts to relitigate prior rulings, which are irrelevant to the standing or summary judgment issues currently before the court.

First, Mr. Perez contends that Lexitas "lied" about his business activities, specifically that it falsely stated Austin Legal Video (ALV) was marketing the Depo-Notes product in 2019. *Id*. However, Lexitas is no longer a party to this case and Mr. Perez makes no effort to connect this allegation to any of the issues before the Court. Mr. Perez then argues that Depo-Notes was improperly dismissed from this case, even though the Court has already ruled on that issue multiple times. *Id*. These arguments are immaterial and have no bearing on whether Mr. Perez has standing or whether summary judgment is appropriate on the remaining claims.

i. **PLAINTIFF LACKS ANTITRUST STANDING AS A MATTER OF LAW**

To bring an antitrust claim in federal court, a plaintiff must establish: (1) injury-in-fact proximately caused by the defendant's conduct, (2) antitrust injury, and (3) proper plaintiff status. *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All.*, 123 F.3d 301, 305 (5th Cir. 1997).

   a. ***Mr. Perez lacks antitrust standing because he cannot establish an antitrust injury***

The antitrust injury requirement is dispositive. "[I]f the injury alleged or proven is not an

'antitrust injury,' the plaintiff does not have a claim cognizable under the antitrust laws." *Midwest Commc'ns v. Minnesota Twins, Inc.*, 779 F.2d 444, 450 (8th Cir. 1985). As the Supreme Court has repeatedly emphasized, "Congress enacted the antitrust laws to protect competition, not competitors." *Id*. (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., 429 U.S. 477, 488 (1977)).

To recover under the Clayton Act, "a plaintiff must prove the existence of antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Atl. Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 334 (1990)*. Mr. Perez has failed to satisfy this requirement.

Even if taken as true, Mr. Perez's allegations describe, at most, harm to only his affiliated businesses, not to competition in any relevant market. While he vaguely asserts that "this boycott is not limited only to Plaintiffs," he offers no factual support for that assertion and no explanation of how the alleged conduct has harmed the market. *See* Document No. 73 at ¶72. His pleading contains no facts showing reduced output, restricted consumer choice, inflated prices, or exclusion of competitors, or any other recognized form of antitrust harm.

Instead, Mr. Perez cites a handful of vague incidents that, at most, reflect industry commentary or discomfort with emerging technology, not actionable anticompetitive conduct. He alleges that an article about new court reporting technology was removed from a website after it received threats, but he inconsistently identifies who published and removed the article—stating in one paragraph that it was Litigation Bids and in another that it was Stenograph—and fails to explain what the article said, what the threats entailed, or how any of this affected market competition. *Id.* at ¶49. He claims that Stenograph faced "the ire" of court reporters after adding a soundwave to its logo, supposedly signaling speech-to-text capabilities, but he offers no evidence of any resulting action or anticompetitive effect. *Id*. He also quotes a statement from the STTI

president referencing potential industry disruption by "barbarians" with new business models, but offers no source, context, or explanation of how the remark connects to any concerted action. *Id*. at ¶¶32-33. The quoted statement is general industry commentary; it does not mention Mr. Perez or his companies, identify any specific business models, or describe any exclusionary behavior or market consequences. None of these incidents even involve Southwest.

The only allegation even arguably involving Southwest is Mr. Perez's claim that videographer Walter Bryan was boycotted. *Id*. at ¶49. However, the record shows that Southwest merely inquired about Mr. Bryan's association with Mr. Perez because it was interested in working with him, not excluding him. *Id*. In the first email correspondence, Southwest asked whether Mr. Bryan was still affiliated with ALV, where he had previously worked, because ALV had imposed restrictive scheduling policies on Southwest and it wanted to determine whether those same restrictions would apply if it worked with Mr. Bryan. While Mr. Perez speculates that Southwest could have asked him directly about his scheduling practices, that commentary does not amount to evidence of anticompetitive conduct. In the second set of emails, Southwest inquired about Mr. Bryan's association with Mr. Perez personally, citing unprofessional behavior previously exhibited by Mr. Perez toward Southwest personnel. Southwest expressed interest in working with Mr. Bryan but sought to confirm that he was no longer affiliated with Mr. Perez in light of that conduct and its resulting decision not to work with him. At most, these allegations describe individual business preferences and interpersonal concerns, not coordinated exclusion or injury to competition.

As the Supreme Court has emphasized, the antitrust laws are "aimed at protecting competition, not competitors." *Brunswick Corp.*, 429 U.S. at 488. Because Mr. Perez has not alleged any injury to the competitive process itself, his claims fail as a matter of law.

Courts have also consistently held that "merely derivative injuries sustained by employees,

officers, stockholders, and creditors an injured company do not constitute 'antitrust injury' sufficient to confer antitrust standing." S*w. Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374, 1378 (7th Cir. 1987); *see Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 533-535 (1983); *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 477, 102 S. Ct. 2540, 2547, 73 L. Ed. 2d 149 ("Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property"); *Pitchford v. PEPI, Inc.*, 531 F.2d 92, 97 (3d Cir. 1975) (corporate president lacked standing to sue either in his capacity as a stockholder or as an officer because injuries were merely derivative of the company's injuries); *National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.*, 748 F.2d 602, 608 (11th Cir. 1984) ("Neither an officer nor an employee of a corporation has standing to bring an action in his own right for an antitrust violation causing injury to the corporation and its business."); *Loeb v. Eastman Kodak Co.*, 183 F. 704, 709 (3d Cir. 1910) (injury to creditor and stockholder of injured corporation too "indirect, remote, and consequential" to permit them to maintain an antitrust action to recover treble damages).

This issue was directly addressed in *Southwest Suburban Board of Realtors, Inc. v. Beverly Area Planning Association*, 830 F.2d 1374 (7th Cir. 1987), where the plaintiff real estate firm and its president, James Regan, alleged a group boycott intended to monopolize real estate brokerage services in two neighborhoods. The court held that Regan lacked standing because he failed to allege any injury that was separate and distinct from the injuries to the real estate firm. While it acknowledged that Regan may have experienced collateral harm (such as lost salary, commissions, or employment benefits), the court held that such injuries were merely derivative of the company's loss and insufficient to support individual standing. *Id*. at 1379.

Similarly, Mr. Perez broadly asserts that he has suffered injuries as a result of the alleged boycott, but he has failed to identify any injury that is separate and distinct from those allegedly sustained by ALV. In fact, the only references to harm in his thirty-one-page live pleading pertain exclusively to ALV and Depo-Notes. For instance, he alleges:

> "As a consequence of this illegal boycott, Mr. Perez's business was devasted. In addition to blackballing Depo-Notes, Defendants also destroyed Austin Legal Video, the videography business that Mr. Perez had run for many years, causing his work to dry up almost completely. And worse, Defendants prevent the nascent Depo-Notes from ever coming to market." Document No. 73 at ¶4.

> "To be clear, this boycott was in place against all of the Plaintiffs—Mr. Perez, Austin Legal Video, and Depo-Notes—each of them suffered harm from the boycott. For instance, the boycott caused Austin Legal Video's business to drop across the board to near-zero from the court reporting firms, many of whom were members of the TCRA." *Id*. at ¶57.

> "Since Defendants' coordinated conduct began, Austin Legal Video has lost a substantial portion of its revenue. Worse, Defendants entirely prevented Depo-Notes from entering into the non-certified, and ultimately, certified transcripts markets, as well as the general speech-to-text market." *Id*. at ¶72.

> "Austin Legal Video has lost customers and been effectively precluded from capturing new customers. Additionally, Depo-Notes has been completely excluded from the marketplace." *Id.* at ¶75.

Not once does Mr. Perez allege a specific injury to himself that is separate from the harm he claims was done to the companies he owns. In his Response to Southwest's Motion to Dismiss, his only argument on this issue is a conclusory statement that he now has "zero business," which simply restates the harm allegedly sustained by ALV. *See* Document No. 110. As in *Southwest Suburban*, even if Mr. Perez experienced incidental effects from the alleged boycott, those types of derivative harm are not enough to establish antitrust standing. Without any allegation of a distinct personal injury, Mr. Perez lacks standing, and his claims must be dismissed.

### b. Mr. Perez lacks antitrust standing because he is not a "proper party"

To fulfill the antitrust standing requirements, a plaintiff must demonstrate that it has proper

plaintiff status, meaning that the plaintiff is an appropriate party to assert the claim. *Doctor's Hosp.*, 123 F.3d at 305. The Supreme Court in *Associated General Contractors (AGC)* identified five factors to assess whether a plaintiff is an appropriate party to bring an antitrust claim: (1) the nature of the plaintiff's alleged injury; that is, whether it was the type of injury the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages. *Associated Gen. Contractors of Cal., 459 U.S.* at 536-554.

  Mr. Perez's allegations fail to meet this requirement. His alleged harm is neither direct nor the type protected by the antitrust laws, as discussed above. His claims are entirely derivative of alleged injuries to ALV. Allowing him to proceed individually would create precisely the type of duplicative recovery and complex damage apportionment that *AGC* cautions against.

  Furthermore, *AGC* explicitly recognizes that the existence of a more directly harmed party undermines the justification for allowing a more remote party to sue. *Id.* at 542. Accordingly, because ALV (the entity allegedly most directly injured) previously asserted antitrust claims in this case, there is no legal basis for Mr. Perez to pursue those claims in his individual capacity.

  Although ALV was originally a named plaintiff, it was dismissed from this case due to Mr. Perez's failure to retain counsel for the entity, as required by the Federal Rules of Civil Procedure. That dismissal was the direct result of Mr. Perez's own decisions, not any action by defendants or the Court. Mr. Perez cannot now rely on the alleged injuries to ALV or Depo-Notes, which was also properly dismissed from this case, to support his individual claims. His role as owner or director does not entitle him to assert the company's antitrust injuries as his own.

  Therefore, because Mr. Perez has not alleged any injury distinct from those suffered by the company, and because standing is a threshold jurisdictional requirement, his claims must be

dismissed as a matter of law.

    ii.    **SUMMARY JUDGMENT IS WARRANTED BECAUSE THERE IS NO GENUINE DISPUTE OF MATERIAL FACT AND PLAINTIFF HAS NO EVIDENCE TO SUPPORT HIS CLAIMS**

To survive a motion for summary judgment, the non-movant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* at 1075 (internal citations and quotation marks omitted).

Mr. Perez's response to Southwest's Motion for Summary Judgment fails to address the core factual and legal grounds on which the motion is based. Rather than presenting summary judgment evidence, Mr. Perez relies on speculation, personal belief, and irrelevant commentary. He does not dispute the key facts set forth in Southwest's affidavits, nor does he offer any admissible evidence to support his claims.

    a.   *No Material Fact Issue Exists Regarding Southwest's Independent Business Decision*

Mr. Perez has not identified any evidence that creates a genuine dispute regarding Southwest's decision to stop using his services. The summary judgment record reflects a straightforward, independently made business decision based on Mr. Perez's own conduct and the logistical limitations he placed on scheduling. Mr. Perez does not offer admissible evidence to challenge the facts or the legitimacy of that decision.

Although Mr. Perez attempts to cast doubt on the credibility of Southwest's affiants, he fails to dispute any of the facts contained in their sworn statements. He does not deny that he imposed scheduling limitations that would hinder Southwest's ability to serve its clients, nor does he refute that he behaved unprofessionally toward Southwest employee Barbara McCauley. *Id.*

Instead, Mr. Perez relies on an email from Ms. McCauley—which begins with the phrase

"Good Morning Trey, Good to hear from you"—as supposed evidence incident did not happen and/or that she was not distressed by it. *Id*. However, this argument is futile, and the referenced email does nothing to refute the contents of Ms. McCauley's sworn affidavit. As she clearly stated in her affidavit, Ms. McCauley does not recall the exact date of the aggressive telephone conversation, which means it may have even occurred after the referenced email was sent. Mr. Perez offers no evidence to suggest otherwise. Moreover, the remainder of the email supports Southwest's stated business justification, as Ms. McCauley explains that Southwest stopped using ALV due to the restrictive scheduling practices the company had placed on Southwest.

Additionally, the tone of the email is consistent with professional communication between business representatives operating in a specialized industry. Ms. McCauley's civil tone does not negate the substance of her sworn testimony. It is entirely unsurprising that a business representative would maintain professionalism in their written communications. This is particularly so if prior interactions have been difficult or contentious, as such professionalism helps avoid escalation or unnecessary conflict. The fact that Ms. McCauley's email opens with a courteous greeting does not undermine the credibility of her sworn testimony or suggest the absence of a prior incident—particularly when Mr. Perez does not even deny that it occurred.

Given that Mr. Perez has not produced any admissible evidence to rebut these facts or demonstrate that Southwest's decision was anything other than an independent business decision, there is no genuine issue of material fact. Accordingly, summary judgment is appropriate.

   b.  ***Plaintiff's Speculation About Internal Communications Does Not Create a Fact Issue***

Mr. Perez further speculates that Southwest must have had internal email communications instructing its staff not to use his services and suggests that the absence of such written documentation is implausible. *Id*. However, this argument is based entirely on Mr. Perez's own

assumptions and subjective beliefs, not on evidence.

Southwest submitted two sworn affidavits from employees who affirm that the decision to cease using Mr. Perez's services was communicated orally to the scheduling team. Mr. Perez again offers no evidence to the contrary. He merely questions the absence of documentation, but he does not dispute the substance of the decision itself. However, whether the instruction was conveyed in writing or orally is not a material fact and it does not change the legitimacy of Southwest's business decision or the basis on which it was made.

Mr. Perez's disagreement with the form of the communication, rather than its substance, does not create a genuine issue of material fact under Rule 56. Summary judgment cannot be avoided based on speculation or disbelief alone.

### c. *Southwest's Communications with Walter Bryan Confirm its stated reasoning for discontinuing the use of Mr. Perez's services.*

Mr. Perez references Southwest's interaction with Walter Bryan as further "evidence" of the true reason Southwest ceased using his services. *Id*. But once again, Mr. Perez offers no factual basis for this argument, only his subjective belief about what Southwest should have done or asked, which is not evidence. *Id*. He speculates that Southwest could have inquired into Mr. Bryan's booking protocol, but this speculation is insufficient to create a genuine issue of material fact.

As explained in the sworn affidavits, Southwest evaluated Mr. Bryan's involvement with ALV and Mr. Perez in the context of a broader decision based on operational issues and prior unprofessional conduct. Mr. Perez himself acknowledges that this interaction is another "indicator of the true reasoning" behind Southwest's decision, which is precisely what was communicated to Mr. Bryan when he asked. Mr. Perez's attempt to reframe this interaction does not contradict any material fact and does not create a genuine dispute sufficient to avoid summary judgment.

In sum, Mr. Perez does not have any evidence that Southwest participated in a group

boycott or engaged in any concerted action to exclude him from the market. The summary judgment record contains no documents, communications, or testimony to support his theories. Mr. Perez does not dispute the material facts set forth in Southwest's affidavits, nor does he present any admissible evidence to show that Southwest's decision to stop using his services was anything other than an independent business decision. Given that Mr. Perez has not identified a genuine dispute as to any material fact and has failed to establish the essential elements of his antitrust claim, Southwest is entitled to summary judgment on all of Mr. Perez's causes of action.

## CONCLUSION AND PRAYER

For the foregoing reasons, defendant, Southwest Reporting & Video Service, Inc., prays that the Court grant its Motion to Dismiss and Motion for Summary Judgment, that plaintiff Pasqual Perez, III take nothing as to all his claims, and that defendant be granted such other and further relief, both general and special, at law or in equity, to which defendant is justly entitled.

Respectfully submitted,

**DAW & RAY, LLP**

*/s/ Kyle Giacco*
Willie Ben Daw, III; SBN: 05594050
Email:  wbdaw@dawray.com
Kyle Giacco; SBN:  07839150
Email: kgiacco@dawray.com
5718 Westheimer, Suite 1400
Houston, Texas  77057
(713) 266-3121 Telephone
(713) 266-3188 Facsimile

**ATTORNEYS FOR DEFENDANT SOUTHWEST REPORTING & VIDEO SERVICE, INC.**

## **CERTIFICATE OF SERVICE**

      Pursuant to the Federal Rules of Civil Procedure, I hereby certify that a true and correct copy of the foregoing instrument to which this Certificate is attached has duly been served upon each party by facsimile, U.S. First Class Mail and/or using the ECF System for filing and transmittal of a Notice of Electronic Filing on this, the 16th day of May 2025.

                                                */s/ Kyle Giacco*
                                                Kyle Giacco